**Jenkins v Dewitt Rehabilitation & Nursing Ctr. Inc.**

2025 NY Slip Op 32250(U)

June 24, 2025

Supreme Court, New York County

Docket Number: Index No. 153230/2022

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JOHN J. KELLEY**                                    PART                                    56M

*Justice*

------------------------------------------------------------------------------X

LEOVA JENKINS, as Proposed Administrator of the Estate of ELOISE BROOKS,

| INDEX NO. | 153230/2022 |
| --- | --- |
| MOTION DATE | 04/25/2025 |
| MOTION SEQ. NO. | 001 |

Plaintiff(s),

- v -

DEWITT REHABILITATION AND NURSING CENTER INC. d/b/a UPPER EAST SIDE REHABILITATION AND NURSING CENTER, ABC CORPORATION, ABC PARTNERSHIP,

**DECISION + ORDER ON MOTION**

Defendant(s).

------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93.

were read on this motion to/for                                    DISMISS                                    .

In this action to recover damages, inter alia, for medical malpractice, and pursuant to Public Health Law §§ 2801-d and 2803-c for purported violations of statutes and regulations governing nursing homes, the defendant Dewitt Rehabilitation and Nursing Center, Inc., doing business as Upper East Side Rehabilitation and Nursing (Dewitt), moves pursuant to CPLR 3211(a) to dismiss the complaint as against it on the ground that the complaint fails to state a cause of action (CPLR 3211[a][7]) and for lack of subject matter jurisdiction (CPLR 3211[a][2]). The plaintiff opposes the motion. The motion is granted only to the extent that claims asserting that Dewitt engaged in acts or omissions constituting malpractice or statutory nursing home negligence between March 7, 2020 and April 6, 2021 are dismissed, inasmuch as the complaint fails to state a cause of action against it by virtue of the immunity from civil liability conferred upon it by the Emergency or Disaster Treatment Protection Act (Public Health Law former §§ 3080–3082; hereinafter EDTPA). The motion is otherwise denied, however, as to the

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT**                                    **Page 1 of 11**
**REHABILITATION and NURSING CENTER INC.**
**Motion No. 001**

allegations arising from the care that the plaintiff's decedent, Eloise Brooks (the decedent), received at Dewitt prior to the effective date of EDTPA, since the court concludes that the plaintiff has sufficiently alleged causes of action that fall outside the scope of EDTPA immunity.

The decedent was a resident of Dewitt from approximately November 2019, until she was transferred to Lenox Hill Hospital (Lenox Hill) on April 8, 2020. She died on April 14, 2020. In the complaint, the plaintiff, Leova Jenkins, as administrator of the decedent's estate, alleged that Dewitt became aware of the COVID-19 pandemic in or around January 2020, but failed to provide the decedent with appropriate care or customary nursing and rehabilitation services between January 2020 and the decedent's April 8, 2020 transfer to Lenox Hill. The plaintiff further alleged that the decedent contracted COVID-19 while at Dewitt's facility, and that Dewitt failed to take proper precautions to prevent and control the spread of infections, including by failing to provide adequate personal protective equipment (PPE), failing to isolate infected residents, inadequately sanitizing equipment, and failing to screen staff and visitors for COVID-19 symptoms. Finally, the plaintiff alleged that the decedent suffered from neglect and the deterioration of her condition as a result of the facility's failures during the COVID-19 crisis.

In its motion, Dewitt argued that the court lacked subject matter jurisdiction over this action, and that the complaint should be dismissed for failure to state a cause of action because EDTPA and Executive Order 202.10 conferred immunity upon it from civil actions such as the instant case. Dewitt further contended that the federal Public Readiness and Emergency Preparedness Act (Pub. L. 109-148, as amended, Pub. L. 116-127, 42 USC § 247d-6d; hereinafter the PREP Act) also provided it with immunity for acts related to healthcare services and "covered countermeasures" undertaken in response to the COVID-19 pandemic. The plaintiff, in opposition, argued that the court has subject matter jurisdiction and that, in any event, EDTPA immunity is inapplicable because the statute has since been repealed, and that the care provided to the decedent was a continuation of services that began prior to the pandemic. The plaintiff further contended that the PREP Act does not apply, as the claims do

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.**
**Motion No. 001**

Page 2 of 11

2 of 11

[* 2]

not involve the use or implementation of any covered countermeasures.  Finally, the plaintiff argued that the complaint sufficiently alleged gross negligence and recklessness, which fall outside the scope of statutory immunity under both EDTPA and the PREP Act.

When assessing the adequacy of a pleading in the context of a motion to dismiss under CPLR 3211(a)(7), the court's role is "to determine whether [the] pleadings state a cause of action" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 151-152 [2002]).  To determine whether a claim adequately states a cause of action, the court must "liberally construe" it, accept the facts alleged in it as true, accord it "the benefit of every possible favorable inference" (*id*. at 152; *see Romanello v Intesa Sanpaolo, S.p.A.*, 22 NY3d 881 [2013]; *Simkin v Blank*, 19 NY3d 46 [2012]), and determine only whether the facts, as alleged, fit within any cognizable legal theory (*see Taxi Tours, Inc. v Go New York Tours, Inc.,* 41 NY3d 991, 993 [2024]; *Hurrell-Harring v State of New York*, 15 NY3d 8 [2010]; *Leon v Martinez*, 84 NY2d 83 [1994]; *Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc.*, 10 AD3d 267 [1st Dept 2004]; CPLR 3026).  "The motion must be denied if from the pleading's four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*511 W. 232nd Owners Corp. v Jennifer Realty Co*., 98 NY2d at 152 [internal quotation marks omitted]; *see Leon v Martinez*, 84 NY2d at 87-88; *Guggenheimer v Ginzburg*, 43 NY2d 268 [1977]).  Where, however, the court considers evidentiary material beyond the complaint, as it does here, the criterion becomes "whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one" (*Guggenheimer v Ginzburg*, 43 NY2d at 275), but dismissal will not eventuate unless it is "shown that a material fact as claimed by the pleader to be one is not a fact at all" and that "no significant dispute exists regarding it" (*id*.).  Nonetheless, "conclusory allegations—claims consisting of bare legal conclusions with no factual specificity— are insufficient to survive a motion to dismiss" (*Godfrey v Spano*, 13 NY3d 358, 373 [2009]).

Initially, the court has subject matter jurisdiction over the claims asserted in this action.

Subject matter jurisdiction

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.
Motion No.  001**

**Page 3 of 11**

[* 3]

"refers to the power of the court to hear the kind of case that is presently before it for adjudication (*Matter of Newham v Chile Exploration Co.*, 232 NY 37; *Matter of Rougeron*, 17 NY2d 264; *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159; *Hunt v Hunt*, 72 NY 217). Whether a court has subject matter jurisdiction is determined by the Constitution, statutes and (occasionally) the rules which confer jurisdiction. (Siegel, *Practice Commentaries*, McKinney's Cons Laws of NY, Book 7B, CPLR 3211, C3211:11, at 17), and not by the particular facts of any case. (*Hunt v Hunt*, *supra*.) The question to be resolved is whether the court has jurisdiction over the 'type' of case, not whether it has jurisdiction over 'this particular' case. (*1890 Realty Co. v Ford*, 121 Misc 2d 834; Treiman, *Subject Matter Jurisdiction in Summary Proceedings*, NYLJ, Mar. 2, 1990, at 1, col 1; *Hunt v Hunt*, *supra*.)"

(*New York County Dist. Attorney's Office v Oquendo*, 147 Misc 2d 125, 127-128 [Civ Ct, N.Y. County 1990]). Thus, subject matter jurisdiction

"'refers to objections that are 'fundamental to the power of adjudication of a court.' 'Lack of jurisdiction' should not be used to mean merely 'that elements of a cause of action are absent,' but that the matter before the court was not the kind of matter on which the court had power to rule"

(*Manhattan Telecom. Corp. v H & A Locksmith, Inc.*, 21 NY3d 200, 203 [2013], quoting *Lacks v Lacks*, 41 NY2d 71, 74 [1976]; *see Garcia v Government Emps. Ins. Co.*, 130 AD3d 870, 871 [2d Dept 2015]). "Subject matter jurisdiction is a 'power to adjudge concerning the general question involved' in litigation, and 'is not dependent upon the state of facts which may appear in a particular case'" (*Henry v New Jersey Tr. Corp.*, 39 NY3d 361, 371 [2023], quoting *Hunt v Hunt*, 72 NY 217, 229 [1878]). Pursuant to NY Constitution, art VI, § 7(a), "[t]he supreme court shall have general original jurisdiction in law and equity." Thus, lack of subject matter jurisdiction is not implicated where a complaint fails to state a cause of action because a claim is barred by an exclusive administrative remedy (*see Hernandez v 2075-2081 Wallace Ave. Owners Corp.*, 176 AD3d 467, 467 [1st Dept 2019]). Crucially, immunity from suit is a waivable defense and, hence, cannot be the basis for the invocation of lack of subject matter jurisdiction (*Henry v New Jersey Tr. Corp.*, 39 NY3d at 369-372; *Gillis v Carmel Richmond Nursing Home, Inc.*, 83 Misc 3d 1256[A], 2024 NY Slip Op 50984[U], *5, 2024 NY Misc LEXIS 3283, *13 [Sup Ct, Richmond County, Jul. 29, 2024]). This court thus has subject matter jurisdiction over the instant medical malpractice action.

153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.
Motion No. 001 Page 4 of 11

4 of 11

[* 4]

Nonetheless, the complaint fails, in part, to state a cause of action, inasmuch as, under the circumstances of this case, EDTPA confers immunity upon Dewitt for acts and omissions attributable to it during the limited statutory period of immunity, that is, from March 7, 2020 through April 6, 2021.

In March 2020, then-Governor Andrew Cuomo signed Executive Order No. 202 (9 NYCRR 8.202), declaring a disaster emergency in New York State, and Executive Order No. 202.10 (9 NYCRR 8.202.10), which conferred immunity upon certain healthcare workers and facilities from civil liability for any injury or death alleged to have been sustained directly as a result of the provision of medical services in support of New York's response to the COVID-19 pandemic, except where such injury or death was caused by gross negligence or recklessness. On April 3, 2020, the Legislature enacted EDTPA, which conferred upon any healthcare facility or healthcare professional immunity from civil or criminal liability for harm related to the care of patients with COVID-19, provided that:

> "the health care facility or health care professional is arranging for or providing health care services pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law; the act or omission occurs in the course of arranging for or providing health care services and the treatment of the individual is impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives; and the health care facility or health care professional is arranging for or providing health care services in good faith"

(Public Health Law former § 3082[2]). The immunity did not apply where an act or omission constituted willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm (*id*.). EDTPA was effective retroactive to March 7, 2020, making it applicable to acts or omissions that occurred on or after that date. On April 6, 2021, the legislature repealed the EDTPA, with the repeal to take effect immediately.

Separately, on March 17, 2020, the Secretary of the United States Department of Health and Human Services invoked the PREP Act, which provided immunity from liability to "covered persons" for loss caused by or relating to the administration or use of "covered

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.**
**Motion No. 001**

Page 5 of 11

5 of 11

[* 5]

countermeasures" during a public health emergency (*see* 42 USC § 247d-6d[a][1]). "Covered countermeasures" include any drug, device, or product used to treat, diagnose, prevent, or mitigate COVID-19, such as PPE, vaccines, and diagnostic tests, when such items have been authorized by the United States Food and Drug Administration (see *Escobar v Mercy Med. Ctr.*, 83 Misc 3d 1213[A], 2024 NY Slip Op 50704[U] [Sup Ct, Nassau County, Jun. 11, 2024]). The sole exception to PREP Act immunity applies in cases involving death or serious physical injury proximately caused by willful misconduct (*see* 42 USC §§ 247d-6d[d][1], [2]).

With respect to the issue of whether the repeal of the EDTPA was retroactive, thereby negating statutory immunity for acts or omissions that occurred between March 7, 2020, and April 6, 2021, the courts have consistently determined that it is not. As the Appellate Division, First Department, recently held in *Hasan v Terrace Acquisitions II, LLC* (224 AD3d 475, 477 [1st Dept 2024]), the statutory text does not contain retroactivity language, and multiple factors relevant to retroactivity analysis were deemed inapplicable. The Second Department adopted that analysis as well (*see Hyman v Richmond Univ. Med. Ctr.*, _____ AD3d_____, 2025 NY Slip Op 03313, *2 [2d Dept, Jun. 4, 2005]; *Damon v Clove Lakes Healthcare & Rehabilitation Ctr., Inc.*, 228 AD3d 618, 619 [2d Dept 2024]). Likewise, in *Whitehead v Pine Haven Operating LLC* (222 AD3d 104, 107 [3d Dept 2023]), the Third Department found that both the text and legislative history of the repeal supported prospective-only application. Similarly, in *Ruth v Elderwood at Amherst* (209 AD3d 1281, 1287 [4th Dept 2022]), the Fourth Department concluded that the legislature's expressions of intent were insufficient to support retroactive repeal. Accordingly, the EDTPA remains applicable to the claims in this case that arose from alleged acts and omissions that occurred during the statute's effective period.

With respect to the statutory criteria, the record demonstrates that Dewitt was arranging for or providing healthcare services to the decedent within the meaning of the EDTPA and was doing so in good faith. The court further finds that the treatment of the decedent during that period of time was affected by Dewitt's medical and operational decisions made in response to

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC. Motion No. 001**  **Page 6 of 11**

the COVID-19 outbreak, and that those decisions were taken in support of or as a result of state directives issued during the public health emergency. The statute does not require that the treatment be impacted in a particular way, positively, negatively, or otherwise, nor does it mandate that the patient's experience be unique relative to others. It also imposes no threshold of severity or burden of proof regarding which aspect of care was impacted. Rather, as the Appellate Division has clarified, it is sufficient that the treatment be affected by the facility's pandemic-related determinations or activities (see *Holder v Jacob*, 231 AD3d 73, 85 [1st Dept 2024]). The court thus concludes that, pursuant to EDTPA, Dewitt is entitled to immunity from the claims asserted by the plaintiff arising from the care that the decedent received from Dewitt between March 7, 2020, and April 8, 2020, the date of her transfer to Lenox Hill Hospital.

In showing that its treatment of the decedent was impacted by COVID-19 and by the facility's determinations and activities in response thereto, Dewitt submitted extensive documentation, including the affidavit of Oksana Yovchenko, R.N., who served as Director of Nursing at the facility during the relevant period, its internal COVID-19 infection control protocols, the decedent's medical records, a series of statewide and local guidance materials, executive orders, and New York State Department of Health (NYS DOH) advisories that shaped the facility's COVID-19 response. Collectively, these submissions demonstrated that Dewitt's care of the decedent was shaped and constrained by state directives during the early phase of the pandemic, and that the facility's actions fell within the scope of EDTPA immunity. These materials establish precisely the kind of entitlement to immunity that the EDTPA was designed to afford (*see Hasan v Terrace Acquisitions II, LLC*, 224 AD3d at 477; *Whitehead v Pine Haven Operating LLC*, 222 AD3d at 110; *Martinez v NYC Health & Hosps. Corp.*, 223 AD3d 731, 732 [2d Dept 2024]; *Mera v NY City Health & Hosps. Corp.*, 220 AD3d 668, 670 [2d Dept 2023]; *see also Holder v Jacob*, 231 AD3d at 88 ["where, as here, the CPLR 3211(a)(7) motion is predicated on what is asserted to be a complete defense, and that motion is supported by evidence, the evidence of the defense must be conclusive"]; *but cf. Damon v Clove Lakes*

153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.
Motion No. 001

Page 7 of 11

[* 7]

*Healthcare & Rehabilitation Ctr., Inc.,* 228 AD3d 618, 619 [2d Dept 2024] [finding that the defendant's evidentiary showing was insufficient to meet all three statutory requirements for immunity]).

In opposition, the plaintiff submitted excerpts from the decedent's nursing home chart, a redacted death certificate, reports from the NYS DOH and the Office of the Attorney General, and inspection deficiency findings. The plaintiff argued that Dewitt failed to provide actual proof of its eligibility for immunity under the EDTPA, including evidence of adequate infection control protocols, sufficient PPE availability, and proper staffing during the pandemic. The plaintiff further contended that the facility's care amounted to gross negligence. The court finds these submissions unavailing. First, based on the plaintiff's own complaint and the medical records provided by the defendant, the decedent's care at Dewitt during the relevant period, from March 7, 2020, through her transfer to Lenox Hill Hospital on April 8, 2020, falls squarely within the time frame in which the EDTPA was in effect. Secondly, Dewitt's exhibits adequately addressed its COVID-19 protocols, infection control practices, and operational response to the public health emergency. Yovchenko's affirmation, and the facility's internal documentation, including its COVID-19 infection control policy, established that the facility implemented response measures consistent with then-governing directives. Although the plaintiff asserted that Dewitt had preexisting, pre-pandemic compliance issues and staffing concerns, these allegations do not meet the high bar required to overcome EDTPA immunity. Accordingly, the court finds that the plaintiff's allegations that Dewitt should have or could have been prepared for the pandemic, before anyone knew of its severity and virulence, lacked sufficient factual support and failed to defeat the statutory immunity provided under the EDTPA.

Finally, the plaintiff argued that her claims sounding in gross negligence and recklessness were not subject to statutory immunity. The plaintiff's submissions, including excerpts from the nursing home chart, the redacted death certificate, and inspection findings from the NYS DOH and the federal Center for Medicare and Medicaid Services, failed to

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.**
Motion No. 001

Page 8 of 11

8 of 11

[* 8]

establish a plausible claim of gross negligence. The COVID-19 policies, Yovchenko's affirmation, and the facility's contemporaneous compliance efforts negated such claims (*see Hasan v Terrace Acquisitions II, LLC*, 224 AD3d at 479) and, hence, with respect to the allegations of gross negligence, a fact alleged to be a fact by the plaintiff is not a fact at all. Additionally, the plaintiff's references to citations for infection control violations, some of which allegedly predated the pandemic, did not sufficiently support a gross negligence claim (see *id.*). In any event, allegations purporting to support a gross negligence claim that are devoid of factual specificity and replete with legal conclusions cannot survive dismissal (see *Lociero v Park Avenue Operating, LLC* [Sup Ct, Nassau County, Index No. 615904/2022, Sep. 26, 2023], citing *Godfrey v Spano*, 13 NY3d at 373). Thus, the gross negligence exception is not applicable, and Dewitt is entitled to immunity under the EDTPA for acts or omissions that might have caused or contributed to the decedent's contraction of COVID-19, whether occurring before or during the immunity period.

In light of the court's determination with respect to EDTPA immunity during that applicable period of time, it need not address Dewitt's contention that it also was conferred immunity from suit by virtue of the federal PREP Act. Were the court to address that issue, it would be constrained to conclude that it is not entitled to PREP Act immunity. In a state-court action, when addressing an immunity defense pursuant to the PREP Act, the court first must determine whether the plaintiff's claims fall within the act's immunity provision (*see* 42 USCS § 247d-6d[a][1]; *Thomas v Highland Care Ctr.*, 2024 NYLJ LEXIS 3209 [Sup Ct, Queens County, Sep. 27, 2024]). The PREP Act is triggered only where there are allegations that the defendant administered countermeasures improperly, thus causing injury (see *Whitehead v Pine Haven Operating LLC*, 2022 NY Slip Op 34685[U], *5, 2022 NY Misc LEXIS 35761, *5 [Sup Ct, NY County, Nov. 29, 2022], citing *Parker v St. Lawrence County Pub. Health Dept.*, 102 AD3d 140, 141-142 [3d Dept 2012]). In this instance, the plaintiff's claims pertain only to the defendant's failure to act, and such allegations do not amount to the administration of countermeasures (*see*

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT**          Page 9 of 11
**REHABILITATION and NURSING CENTER INC.**
**Motion No.  001**

9 of 11

*id.*; *see also Adler v Troy*, 2023 NY Slip Op 33804[U], *8, 2023 NY Misc LEXIS 11547, *11-12 [Sup Ct, N.Y. County, Oct. 18, 2023], citing *Dupervil v Alliance Health Operations, LLC*, 516 F Supp 3d 238, 255 [ED NY 2021]). Thus, Dewitt is not entitled to immunity under the PREP Act. This conclusion, however, does not affect the immunity conferred upon it by EDTPA.

As to the allegations arising from certain care that the decedent received *prior* to the effective date of the EDTPA, specifically the development of pressure ulcers in or around December 2019, the court concludes that the plaintiff has sufficiently alleged causes of action that fall outside the scope of EDTPA immunity. Although the complaint did not initially isolate these allegations with specificity, the plaintiff supplemented the complaint with excerpts of the decedent's nursing home chart, evidencing the onset of pressure ulcers before March 7, 2020, and argued that such care was not impacted by or related to COVID-19 treatment or emergency protocols. While EDTPA immunity applies only to acts or omissions occurring on or after March 7, 2020, and undertaken in response to the pandemic and in accordance with the statute's conditions (*see* Public Health Law former § 3082[2]), the plaintiff's claims regarding negligent, pre-pandemic wound care of her decedent, and Dewitt's purported failure to prevent pressure ulcers, plausibly alleged acts of ordinary malpractice or neglect occurring outside the COVID-19 emergency framework. Any deficiencies in the complaint may be amplified by supplemental pleadings, submissions, or affidavits submitted in opposition to a CPLR 3211 motion (*see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005]; *Rovello v Orofino Realty Co.,* 40 NY2d 634, 635 [1976]; *Leon v Martinez,* 84 NY2d 83, 88 [1994]; *Benjamin v Yeroushalmi*, 212 AD3d 758, 760 [2d Dept 2023]; *Houtenbos v Fordune Assn., Inc.,* 200 AD3d 662, 664 [2d Dept 2021]). Applying that standard, the court concludes that the plaintiff has asserted a potentially meritorious claim sounding in medical malpractice, based on pre-pandemic conduct related to wound care, bed sores, and pressure ulcers. Accordingly, that portion of the complaint referring to the care provided prior to March 7, 2020, survives dismissal at this stage.

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT**        **Page 10 of 11**
**REHABILITATION and NURSING CENTER INC.**
**Motion No.  001**

[* 10]                                              10 of 11

This court has considered the parties' remaining contentions, and finds them unavailing.

Accordingly, it is

ORDERED that the motion of the defendant, Dewitt Rehabilitation and Nursing Center, Inc., doing business as Upper East Side Rehabilitation and Nursing, to dismiss the complaint insofar as asserted against it is granted to the extent that all claims arising from acts or omissions relating to the diagnosis, care, or treatment of COVID-19, including, but not limited to, those acts occurring on or after March 7, 2020, are dismissed pursuant to the immunity conferred by the Emergency or Disaster Treatment Protection Act, those claims are dismissed, and the motion is otherwise denied.

This constitutes the Decision and Order of the Court.

| 6/24/2025 | | |
|---|---|---|
| **DATE** | | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**153230/2022 LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS vs. DEWITT REHABILITATION and NURSING CENTER INC.**
**Motion No.  001**

**Page 11 of 11**